Our next case on the call of the docket is agenda number three, case number 113603, People v. Donelson. Counsel for the appellant, please proceed. Good morning, Your Honors. May it please the Court. My name is Jessica Diane Pammon on behalf of the Office of the State Appellate Defender, and I represent the appellant, Mr. Charles Donelson. Your Honors, Illinois has a very strong policy against void sentences. They can be attacked at any time, in any court, by either party, directly or collaterally. In line with this strong policy that Illinois has against void sentences, this Court recently ruled in People v. White that where a fully negotiated guilty plea is induced by a void sentence, that the entire guilty plea is void and should be vacated. In this case, isn't it sort of unclear what the parties actually negotiated for in terms of years and so forth? No, it is not. This guilty plea is the same as in People v. White. It was a fully negotiated guilty plea, meaning that the parties negotiated for the specific fixed sentences in the arrangement that they did. And in this case, the parties negotiated specifically for 50 years on the murder, 30 years on the home invasion, and 30 years on the aggravated criminal sexual assault to run concurrently. And those were the terms of the agreement. And the State was willing to drop some charges in exchange for the guilty plea? Yes. And that is what makes a fully negotiated guilty plea distinct from all others. It's unlike a guilty plea where the defendant pleads guilty for a cap. Your Honor, here in this case, the defendant pled guilty for exactly the sentences that he received. In People v. White, I think the Court also alluded to the fact that the admonishments were improper. In that case, the defendant would not have been aware of what he actually had to have served because of the add-on. In People v. Brown, we said while the sentence or a portion thereof not authorized by statute is void, it is void only to the extent that it exceeds what the law permits. And in that case and others, we have corrected the sentence without vacating the entire conviction. In this case, the sentence to which the defendant agreed to is void only in the manner in which it was to be served, that is, the concurrent, as opposed to giving consecutive sentences that the appellate court found could be imposed in this case. Why can't we do the same thing? The appellate court is assuming that the only essential terms of the plea was the 50-year total and the actual charges. And so the appellate court is erroneously assuming that those are the only two things that were essential. But the parties here, they specifically negotiated for concurrent sentences, and the appellate court cannot assume that that was not important to the plea. The parties could have just as easily negotiated for consecutive sentences in a different arrangement, but it did not. Here, the state pursued maximum sentences on the two lesser offenses when it could have offered the minimum without even affecting the total, but it did not. It went after the maximum. How is the defendant prejudiced by not receiving the concurrent sentences? I mean, in looking at it, let's just say the home invasion count was reversed or vacated, right? Under consecutive sentences, the defendant would receive a lesser sentence, where under concurrent sentences, the defendant would receive the exact same sentence. So how is the defendant prejudiced by not receiving concurrent sentences if that's what you say he bargained for? Well, Your Honor, this court should follow White. There is no prejudice analysis with regard to a voidness claim. Void is void is void. This court did not apply a prejudice analysis for Pierre White. He did not have to show that he would be prejudiced or anything like that. This court is clear. When a fully negotiated guilty plea is entered on a void sentence, it voids the entire plea. And that is what this court held in White, and we are asking the court to hold the same thing in this case. And going back to this exception that the appellate court has tried to make, Your Honor, the appellate court is erroneously assuming that Mr. Donaldson pled guilty for a cap, such that any arrangement of sentences would be in accordance with this plea. And that is not what happened here. Mr. Donaldson did not plead guilty for a cap. And the State concedes this at page 20 in their brief. The State concedes that it says the people agree that the defendant did enter into a fully negotiated plea of guilty in exchange for specific sentences of 50 years for murder, 30 years for home invasion, and 30 years for aggravated criminal sexual assault. Justice Thomas asked a question. Your answer was void is void is void. But how is the defendant prejudiced? Well, Your Honor. Or is the defendant not prejudiced, and does it make any difference if the defendant is prejudiced or not? That's my argument, that it does not make a difference because there is no prejudice analysis that we apply to avoid this claim. I think the question is what is the remedy? Is the remedy to allow the defendant to withdraw his plea, or is the remedy to remand for resentencing? And I think maybe that's where we're kind of trying to figure out what is the appropriate remedy when the court has clearly imposed an illegal sentence. Correct. So we're kind of searching. Why shouldn't this not be merely a remand for resentencing? Because of this Court's rule in White. This Court's rule in White was clear. It was a per se rule that when a fully negotiated guilty plea is induced by a void sentence, that the voidness relates all the way back to the plea itself and not just the sentence. Who knows if Mr. Donaldson would have accepted a plea of 50 years running consecutively? Well, I think, I mean, we know in White that there was prejudice. The legal sentence would be many more years beyond what he had been sentenced to under the plea. We know that's not true here. Are there any, I mean, you've not told us, but are there any collateral consequences? Is there a difference in the way his housing at the DOC? Is there anything that has any kind of negative consequences for him? Were there negative consequences for Mr. White? Okay. First of all, this Court did not in White, this Court did not hold that the guilty plea was void because the sentences could not be reconfigured. That was not determinative in the decision. This Court decided in White that the guilty plea was void because the sentence was void. And that is what we have here. Now, consecutive sentences and concurrent sentences are two different things. The courts have said that consecutive sentences are just deemed more serious. So for that reason, we don't know if Mr. Donaldson would have accepted them. And the appellate court is not in the position to determine what was important to the parties at the time. And at the time of the bargain, I mean, the state had its interest as well when it formed the offer that it gave to Mr. Donaldson. And in this particular case, Your Honors, this is a case that involves multiple victims. There was a 50-year sentence on the murder, a 30-year sentence on the aggravated criminal sexual assault. And we don't know if that was essential, if those numbers were essential. If the state pursued the maximum, that kind of suggests that those sentences were significant, even if they were running concurrently. What's the difference between getting a 50-year sentence that's consecutive and 50 years concurrent? Your Honors, the defendant will still serve 50 years either way. But our argument is right in line with White that void is void and Mr. Donaldson does not have to show any prejudice that would arise. The state was in a position, they could have offered Mr. Donaldson legal sentences. But the state offered him void sentences, assuming the risk that these sentences would not be challenged. And in this case, Mr. Donaldson's case is right in line with White. And we're asking that this Court not make any exceptions. Well, the White Court, I mean, to be fair, the White Court didn't have to discuss prejudice, right? I mean, the sentence, as Justice Tice pointed out, it was the mandatory minimum, right? So there was a mandatory minimum. The sentence didn't qualify for that. So the defendant was going to get more years, right? You don't really have to talk about prejudice in that circumstance. So it seems to come down to, again, what Justice Tice said, remedy. I mean, the remedy in White wasn't available to the defendant here. But in this case, as I pointed out earlier, I think in this case, not only is the defendant not prejudiced, but potentially could have an advantage in having consecutive sentences with 50 years rather than concurrent sentences. So why wouldn't we indicate a remedy that would allow, you know, just the 50 years consecutively? I understand your position. Your position is it's void. You don't have to look further than that. I mean, that's basically your position. And I'd argue that that approach would be contrary to White. And that approach would be contrary to the voidness jurisprudence that we have in this state. Your Honors, it's clear. The parties are clear that the sentence is void. The appellate court is clear that the sentence is void. And in White, this Court has already decided this question, that when we have this situation where the sentence is clearly void, and the defendant has negotiated for specifically that sentence, that the Court cannot unilaterally modify the sentence later on as if the terms of the agreement meant nothing to the State and meant nothing to the defendant. The Court is not in that position to go back and unravel a contract that has been entered into by the parties as if none of these terms were essential, as if the only thing that was important was the total and the charges. And we can't assume that. Ms. Hammond, then what impact does our recent decision in Mearsman have on this case and whether the guilty plea should be void as well, the plea itself, the contract you're talking about? I'm not familiar with the facts of that case, so I can't answer that question. But what I know is that White directly affects this case. You're talking about the sentence being void, and what about the guilty plea itself being void? That is what White tells us, that the voidness relates back to the plea. It's not just the sentence. Because this Court stated in Evans that when you have a fully negotiated guilty plea, meaning when the parties specifically negotiate for specific numbers, specific fixed sentences, that the guilty plea and the sentence go hand in hand. That is what this Court stated in Evans, that it goes hand in hand as material elements of the plea, such that neither party should be able to unilaterally modify the agreement. And that is what the appellate court is allowing trial courts to do now with this decision, is to go back and reconfigure the numbers, go back and change these terms that the parties have already agreed to, to fit. And that is contrary to White, and it's contrary to the voidness doctrine. Your Honors, this Court did not try to parcel out or preserve any aspect of Mr. White's guilty plea. Your Honors, this Court said that because it was a fully negotiated guilty plea based on a void sentence, it is void, and Mr. White should have the opportunity to go back and renegotiate that. Your Honor, the Court did not try to... One more distinction on White. The Court specifically said, and because defendant was not properly admonished, the entire plea agreement is void as well. It didn't say because the sentence is void, the plea agreement. It says because of the improper admonishment. Again, as Justice Thomas pointed out, in that case the defendant could not be sentenced to something that he had been admonished about, because the mandatory minimum was more than he had been admonished. Is that not a distinction between that case and this case? No, because Mr. Donaldson is in the same situation. The Court didn't admonish him that he was subject to consecutive sentences. And by the Supreme Court Rule 402, the judge was required to do that. If consecutive sentences are mandated, the Court is required to tell the defendant. So our guy is not properly admonished either. So we have the same exact situation, and we're asking the Court to give the same remedy and not to open the door to an exception. If the Court opens the door to an exception to the Bright Line Rule in white, it will have to address many more exceptions that will come. Different calculations of the numbers and different things like that when the law is clear, that void is void is void. Your Honor, the State contends that remanding Donaldson's cause for resentencing is the more equitable solution because of the risk of prejudice that the State would have to have in trying to re-prosecute the case. Is that the estoppel argument? No, Your Honor, I was going to get to that, but I can address that if you want. The State argues that the equitable solution is the appellate court solution because the State will be prejudiced trying to re-prosecute a case years later. Now argument, Your Honor, is that any risk of prejudice here would apply not just to the State, but for Mr. Donaldson too. Because once he vacates, once he withdraws his guilty plea, all of the original charges would be reinstated. He'd be subject to consecutive sentencing, and he could face up to a life sentence in prison, whether he goes and gets convicted at trial or by another guilty plea. And so the risk of prejudice is there equally for both parties, Your Honor. And also, the State is speculating that the prosecution would be forced to retry this case when that is not the case. The parties could resume plea negotiations as they did the first time around. And so there's no way to tell at this point that the State is suffering prejudice because they're going to have to re-prosecute the case here. Again, I'd like to... One renegotiation. Correct. Correct. But Mr. Donaldson is asking now to withdraw the plea based on this Court's decision in white, which fits squarely with this case. Again, I would like to mention in terms of the prejudice argument that the State is making, I'd like to mention that the State assumed the risk here. When the State offered Mr. Donaldson illegal sentences, the law was clear for four years already that consecutive sentences were mandatory. But the State assumed the risk and offered Mr. Donaldson sentences that were illegal, and the sentences were challenged, Your Honor. Now getting to the estoppel argument, the State's estoppel argument is also contrary to Illinois law. There has never been an estoppel limitation on a voidness claim. A void judgment can be attacked at any time in any court by either party, directly or collaterally. There is no waiver. There is no estoppel limitation. And to place an estoppel limitation on the voidness argument would really just encourage parties to enter into pleas based on void sentences. The State raised the same argument in Pierre White. This Court did not even address it, Your Honor, because it is contrary to Illinois law. The State's estoppel argument is also based on the erroneous assumption that Mr. Donaldson is trying somehow to retain the benefits of his guilty plea while making the State relinquish their benefits, but that's totally wrong. Mr. Donaldson is trying to vacate his plea in its entirety, meaning he is trying to give up every benefit that he got from this plea and return the parties to the status quo. And so Mr. Donaldson is not trying to hold on to any benefits that he derived from this plea. Your Honors, in sum, the appellate court's exception to White, allowing trial courts to unilaterally reconfigure the terms of a fully negotiated guilty plea after the parties have already agreed to those specific terms, is contrary to White and it's contrary to contract law. Some place in your brief I think you raised the concern that possibly if we sent it back for resentencing as the appellate court did, that Mr. Donaldson would be subject to an increased sentence. Isn't the fact that the appellate court at least said he's to be resentenced in accordance with the plea agreement, doesn't that mean even though you don't want to call it a cap of 50, the 50 would still apply? Right, those were the court's instructions for him to be resentenced within a cap of 50 years. But what I was referring to was the risk of prejudice that exists for Mr. Donaldson by vacating his plea, which is what he is asking. What I'm saying is at that point, all the charges would be reinstated. You're not concerned that the trial court would impose a greater sentence if we simply sent it back? It's only if the plea is vacated and he starts all over. Right, we would expect the trial court to follow the mandate of the appellate court in that situation. Your Honor, so if this court has no further questions, we'd ask that you would reverse the appellate court's decision and allow Mr. Donaldson to withdraw his guilty plea. Thank you. Good morning, Mr. Chief Justice, Honorable Justices of the Supreme Court, Counsel, may it please the Court. I am Assistant State's Attorney Alan Spellberg and I represent the people of the state of Illinois. I'd like to begin with Justice Tice's question, what is the remedy? The remedy in this situation is clear. It's clear under contract law. It's clear under this court's precedent. It's clear that the goal in a situation involving a guilty plea, just as it is in contract, is to do the best to enforce the agreement of the parties, to allow both parties to retain the benefit of the bargain. And that's precisely what the appellate court did here. What the appellate court did was it determined that 14 years after the crime, 10 years after the original guilty plea, 8 years after the subsequent renegotiation, that when it was finally realized that the concurrent sentences were improper and that were void, that the plea as entered into between the parties could still be enforced in a valid and lawful manner, simply by allowing the trial court to reconfigure the sentences to be consecutive as opposed to concurrent and to be well within the applicable statutory ranges. As the appellate court recognized and as this court clearly was questioning, the defendant would suffer no prejudice in this scenario because the sentences which would be imposed would still equal the same amount of time to which he entered his guilty pleas. How do you respond to the defendant's argument that he pled guilty in exchange for specific sentences and he should be entitled to the benefit of that bargain, the specific sentences, of course, being concurrent? Well, Your Honor, I guess I respond just by looking straight to contract law. As this court has recognized, guilty pleas are essentially contracts. And under contract law, when there is a mutual mistake of the parties as to the expression of the intent, it is appropriate for the courts to reform those terms of the agreement as best as possible. Here, admittedly, the parties entered into an agreement for concurrent sentences. That was improper. We know that. But it wasn't simply the state's fault. It wasn't simply the state's mistake. It was a mutual mistake on both parts. The state had no interest in entering into an illegal contract, in entering into improper sentences. It was a mistake. And as this court knows well, for the last 20 years' worth of precedent, the determination of when consecutive sentences are mandatory can be confusing. And that's what happened here. This was a situation where, obviously, the parties and the trial judge, the original trial judge, were confused as to whether or not mandatory consecutive sentences were required. May I ask you a question about that? To me, I have to say, the facts here are very shocking in this case. And I won't lay them all out. Obviously, there will be, in the appellate court opinion, there will be in our opinion. But in any case, the defendant pled guilty to first-degree murder, aggravated criminal sexual assault, home invasion, and maybe a second count of aggravated criminal sexual assault. And the state offered him 55 years. And then later, very soon later, reduced that and allowed him to plead to 50 years to all of those sentences. Is there any discussion anywhere as to consecutive and concurrent sentences? How did we come to a point where this was the state's offer? Well, Your Honor, the plea negotiations are not on the record, as is typical. Obviously, the facts of this case, which you are correct, are horrific. This involves a murder over a $5 debt and horrific, humiliating actions on behalf of the defendant against the victims. But what occurred here was in the middle of trial, where the state was seeking the death penalty, after the opening statement, after the initial witnesses testified and during a break in the proceedings, is when the parties reached an agreement, when the defendant agreed to testify. And so it all occurs off the record. It is with the trial court's approval, the acceptance of the plea is taken, the plea is clearly knowing and intelligent. And obviously, the perception at the time was that this is a very strong case, that the defendant will likely be sentenced to death or life based upon the strength of this evidence. And he was trying his best to avoid a trial at that time. Where the 55 years came and then where the 50-year sentence came two years later upon the renegotiation after the remand from the appellate courts, that's not off record. My guess is that that was a timeframe that was fully negotiated between the parties as to what is appropriate to represent the horrific nature of this crime. So in this death penalty case, the state twice misunderstood the law as to consecutive sentencing? Your Honor, I can only acknowledge that. I mean, it's unfortunate, but it's true. And as I said, it's quite often, including most recently with the Scortsman and Amos case and the Mearsman decision, that trial judges are still to this date having a difficult time understanding the scope of Section 584 and when it is mandatory and when it's not. I would only say that in this case, based upon the timing of the crime, this was a 1998 crime. It was in 1997 when the Section 584 was altered to require the mandatory consecutive sentences in both the single course of conduct and non-single course of conduct. It wasn't until 1999 after the Whitney decision that murder became a triggering offense itself. This is a 1998 crime, an original 2001 sentencing. My guess is that with two different courses of conduct involved between the sexual assaults and the murder and the home invasion, my guess is that everyone was confused. Not just the state's attorneys, not just the trial judge, but the defense. The defense attorneys were also confused. And that's why I stress this was a mutual mistake. It was not in the state's interest at all to enter into a contract with improper sentences. But unfortunately it happened. And now 14, 15 years later we're faced with what to do with a voluntary and knowing and intelligent guilty plea which has been rendered final by time with the inability to recreate the exact scenario that we were at going to trial back in 2001. What is the proper remedy? And that's why what the appellate court did here was fully appropriate, fully consistent with contract law, fully consistent with this court's rulings in criminal cases. I point to this court, to its decisions in People v. O'Ryan v. Roe, People v. Williams, People v. Whitefield, and People v. Thompson. In each of those cases this court was confronted with a negotiated plea, recognizing there was a problem in the expression of the sentencing, and in order to maintain the benefit of the bargain for the parties, reformed the sentences in some way. I'm going to point directly to People v. Thompson as a direct example of what this court has done in the face of a claim of a void sentence. In Thompson it was a negotiated plea where one of the sentences involved per aggravated battery and he received an extended term sentence, but it was not the most serious offense available of which the defendant was being convicted of. And so under the statute as a matter of law, it was prohibited to give him an extended term sentence on that aggravated battery charge. This court recognized the voidness of that claim under ARNA, recognized that it exceeded the court's statutory authority to give that extended term sentence, and rather than vacate the entire plea, rather than force everything to start over from the beginning, simply removed the extended term nature of that aggravated battery charge, allowed the party's intent to be expressed in a lawful manner. It was a guilty plea that was being affirmed in that case. It was a guilty plea that was being recognized as being appropriate in that case. And this court, recognizing the mistake of law, the mutual mistake that occurred in that case, managed to allow, through an equitable authority essentially, allow the parties to maintain the judgment that they had voluntarily and knowingly and intelligently entered into. And so it's for that reason that what the appellate court did here is fully and appropriate and consistent with contract law, consistent with this court's precedent. But in terms of the estoppel argument that Justice Freeman asked about, which we include in our brief, this is a collateral proceeding. This is not a direct appeal. And this court has always recognized the distinction between collateral proceedings and direct appeals  The people, the society, the entire state of Illinois, the entire community benefits from finality of judgment. Whether it's criminal or civil, there is an appropriate... If you applied the adoption of estoppel, how would that affect case law that void citizens can be attacked at any time? Well, Your Honor, I actually did a lot of research into this. And based upon ARNA, which is sort of the seminal case regarding voidness, particularly when it comes to consecutive sentences, there has been only one decision by this court that we could find involving a determination of a void sentence in a collateral proceeding, and that was Thompson. Thompson was the only one involving that scenario, where again, as I stated, it was the excess extended term on the aggravated battery charge, which violated the statute. And this court simply vacated the extended term nature of the conviction. So the voidness argument, very rarely, it's made frequently in collateral proceedings, but it very rarely results in any relief. And I think the reason why that's important is going back to ARNA and even before ARNA in Davis, what this court had recognized is that void is a term which is utilized frequently, but for it to really be considered void, it has to be something outside the trial court's jurisdiction. A void order is one where the court doesn't have the authority to enter it at all. And so in the Thompson scenario, it was clearly outside the court's authority to enter it. It wasn't simply a mistake as to what the meaning of the statute was. It could not impose an extended term sentence in that scenario. In ARNA, there was, it was clearly, it was two attempt murder convictions where both victims were injured, so it clearly fell within the statute as required. In this case, as I said, it was confusing. We ultimately now know that it was improperly identified as concurrent sentences, but it was confusing. But in Davis and in ARNA, this court recognized that mistakes in the law, mistakes in the application of the law, doesn't render something void. It merely renders it voidable. And so in terms of your question, I'm sorry for the long-winded answer. In terms of your question, how would it affect the voidness doctrine, very little. Very little because collateral attacks are very rarely successful in demonstrating a voidness. And allowing estoppel to apply in a collateral proceeding, recognizing the validity of the estoppel, helps support the determination of finality of judgment that exists everywhere in our legal construct. It exists in our civil proceedings. It exists in our criminal proceedings. And recognizes that litigants shouldn't have to go back 10, 15, 20 years later to relitigate a point that was most likely simply an error in application in the first place. That's an important distinction which hasn't had the opportunity to be litigated, and it wasn't really available to be litigated in the Pierre White decision. And the reason why is because Pierre White was a direct appeal. It involved a defendant who, days after pleading guilty to murder in exchange for a 20-year sentence, filed a motion to withdraw the guilty plea saying, my sentence is too low. It doesn't comport with the mandatory statutory requirements. And so from that point forward, the litigation continued whether or not it was a valid guilty plea. But the question before the court ultimately was, could that conviction be affirmed in any way? And what the court said was, no, it could not, because no first-degree murder conviction could be entered in that case for less than a 35-year period because the statutes required it. The state couldn't offer anything below that. The defendant couldn't accept anything below that, and the trial court couldn't enter judgment on anything below that. And so White was a scenario where nothing could be done to recognize the validity of that conviction in a direct appeal context, whereas this case is in a collateral context, and as the appellate court said, something certainly can be done to reaffirm and recognize the validity of this. As I said at the beginning, it's consistent with contract law. It's consistent with criminal law. It's consistent with our finality of judgment. And for that reason, we would ask this court to affirm the appellate court's ruling in this case. Thank you. Thank you. Rebuttal. Your Honors, the state mentions that remanding for resentencing would be in line with contract law, and the state mentioned a few cases. And I'd like to mention that those cases are completely distinguishable. The case mentions Thompson, but Thompson was not a fully negotiated guilty plea. The defendant did not plead guilty in exchange for a specific sentence. He pled guilty in exchange for the state to drop certain charges. So that is not the same scenario that we have here. The critical factor here is the factor that is present in White, that he pled guilty for specific fixed sentences. That was not the case in Thompson. Your Honor, also the state mentions Whitfield. Whitfield doesn't involve a void sentence. That was a benefit of the bargain claim. The defendant was not trying to vacate his plea. He's trying to get the benefit of his bargain in that case. And so we don't even have the voidness doctrine being applied in that case, because his 25-year sentence was authorized by law. It was not, you know, a violation of the statutory authority. The state also mentioned Williams. But Williams was not a fully negotiated plea either. There the defendant pled guilty in exchange for a cap, which is totally different from a fully negotiated guilty plea. And that goes back to what I was explaining earlier. The appellate court's decision treats this case as if Mr. Donaldson pled guilty for a cap. The court changed the complete nature of the plea agreement here, from a fully negotiated plea to a plea for a cap. And that is not what the parties bargained for. That was not terms of the agreement at the time. And the court Is there anything in the record to show that, that it was not a cap? Yes, because when the court admonished the defendant, he admonished him that he's going to receive 50 years on the murder, 30 years on the aggravated criminal sexual assault, and 30 years on the home invasion. And those sentences were fixed numbers. And that was what Mr. Donaldson was expecting to get, and that was what the state was willing to give. And again, I want to mention that the state wasn't willing to give anything less than the maximum on those two lesser offenses, which shows that those two numbers were significant. The state did not mistakenly enter, I mean, offer Mr. Donaldson concurrent sentences as the state has offered. There is absolutely no evidence on the record whatsoever to show that anybody was operating under a mistake here. There's no evidence from which to conclude that in this case, Your Honors. The state could state that it got maximum sentences on those two lessors, and Mr. Donaldson was able to avoid consecutive sentencing, and that's what happened in this case. And there's no reason to assume that that was a big mistake. Consecutive sentences had been mandatory for four years, and the judge, both attorneys were, you know, lawyers. And so we can't just assume that nobody knows the law, Your Honor. It's interesting that state isn't arguing that it should get the 30 or max on the two others. It's an argument that you're making, but that seems more properly to be their argument, because as Justice Thomas pointed out, it could be to your client's advantage to get the lesser consecutive sentences. Correct. And I bring that up just to emphasize here that the appellate court is not in any position to determine what was essential to the state at the time of the plea or what was essential to the defendant at the time of the plea. And so back in 2001, we don't know. We don't know if, you know what I'm saying, that the state would have offered anything less than the max. We don't know if the victim's family would have been acceptable with that. We don't know what was going on during that plea bargaining process. And it's not in the record. And it's not in the record. So this court has no further questions. We'd ask that this court would reverse the appellate court's decision and allow Mr. Donaldson to withdraw his guilty plea. Thank you. Ms. Pomone and Mr. Spellberg, we thank you for your arguments today. Case number 113603, People v. Donaldson, is taken under advisement.